# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

|  |  |
|---|---|
| | **Case No.: EDCV 19-00154-CJC(SPx)** |
| **BRYAN MADEIRA, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. 65]** |
| **v.** | |
| **CONVERSE, INC. and DOES 1-50, inclusive,** | |
| **Defendants.** | |

## I.    INTRODUCTION

On November 21, 2018, Plaintiff Bryan Madeira, on behalf of himself and others similarly situated, filed this lawsuit as a putative class action in San Bernardino County Superior Court against Defendant Converse, Inc. and unnamed does.  (Dkt. 1 [Notice of Removal], Ex. A [State Court Complaint].)  On January 25, 2019, Defendant removed

this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d)(2), 1453, 1711–15. (Notice of Removal at 1.) On March 13, 2020, the Court denied Plaintiff's motion for class certification and remanded the action back to state court *sua sponte* on the ground that Plaintiff could no longer satisfy the CAFA requirements. (Dkt. 38.) The Ninth Circuit reversed, holding that this Court still had jurisdiction over Plaintiff's individual claims despite the denial of class certification. (Dkt. 46 [Memorandum from Ninth Circuit Court of Appeals] at 2–3.)

Only Plaintiff's claims remain. Plaintiff alleges eight causes of action against Defendant under California law: (1) failure to provide required meal periods; (2) failure to provide required rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to pay all wages due to discharged and quitting employees; (6) failure to maintain required records; (7) failure to furnish accurate itemized wage statements; and (8) unfair and unlawful business practices in violation of California's Unfair Competition Law ("UCL"). Defendant now moves for summary judgment on each claim. (Dkt. 65 [hereinafter "Mot."].) For the following reasons, Defendant's motion for summary judgment is **GRANTED**.[1]

## II.    BACKGROUND

The following facts are undisputed unless otherwise noted.[2] Defendant Converse is a footwear and apparel company that sells and distributes goods in California. (Dkt. 29

---

[1] The Court held a hearing on this matter on January 3, 2022.

[2] Plaintiff raises relevance objections to the majority of Defendant's Statement of Undisputed Facts. The Court notes that "objections for relevance are generally unnecessary on summary judgment because they are 'duplicative of the summary judgment standard itself.'" *See Sandoval v. County of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) ((quoting *Burch v. Regent's of Univ. of Cal.,* 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)). That is, "if evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition 'of consequence in determining the action,' and therefore relevant." *Id.* Plaintiff also raises hearsay objections to the Declaration of Kimberly Doyle, an

[First Amended Complaint, hereinafter "FAC"] ¶ 12.)  Plaintiff worked for Defendant as a non-exempt equipment operator in Defendant's Distribution Center in Ontario, California from December 7, 2015 through July 18, 2018.  (*Id.* ¶ 3; Dkt. 66-3 [Statement of Undisputed Facts, hereinafter "SUF"] ¶¶ 1, 34; Dkt. 31-3 [Declaration of Plaintiff Bryan Madeira] ¶ 2.)

Plaintiff alleges that while working for Defendant, Defendant committed numerous wage and hour violations under California law, including failure to pay minimum and overtime wages for off-the-clock work, failure to provide meal and rest periods, failure to pay all wages owed, and failure to provide accurate wage statements and records.  (*See generally* FAC.)

## A.    Off-the-Clock Work

Defendant maintains policies regarding employees' time keeping, meal and rest breaks, and wages.  Defendant's policy entitled "Work Time and Hours Worked – Non-Exempt" states that employees must be clocked in whenever they are working.  (SUF ¶ 1.)  Plaintiff admits that it was his "understanding of [this] policy" that "[h]ourly or nonexempt employees should only be performing work while clocked in or recording their time."  (*Id.* ¶ 2.)  Plaintiff also admits that it was his "understanding of the policy" that "[a]ll time worked, whether scheduled or unscheduled, overtime or straight time,

---

employee of Defendant.  (SUF ¶¶ 29–31, 33, 36–37; Dkt. 34-2 [Declaration of Kimberly Doyle, hereinafter "Doyle Decl."].)  Ms. Doyle's declaration details Defendant's bonus and pay structure, which she has personal knowledge of due to her role as Defendant's Senior Director of Compensation and Benefits Operations for Defendant's parent company, Nike, Inc. (Doyle Decl. ¶ 2.)  Plaintiff fails to identify any specific statements within the declaration that constitute hearsay.  Nor does the Court see any instances of inadmissible hearsay within Ms. Doyle's declaration.  In any event, the statements regarding Plaintiff's bonus and pay structure in Ms. Doyle's declaration may be properly considered under Rule 56(e) because they were made based on Ms. Doyle's personal knowledge, show that she is competent to testify to the matters stated therein, and set forth facts that would be admissible.  *See Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing Fed. R. Civ. Proc. 56(e)).

authorized or unauthorized, must always be recorded exactly as it occurred." (*Id.* ¶ 3.) Plaintiff also testified that all of his time punches accurately reflected all of the time he worked. (*Id.* ¶ 4.) If an employee needed to correct their time punches, supervisors were required to correct it. (*Id.* ¶ 5.) When Plaintiff's time punches were not accurate, he informed his supervisor and his supervisor corrected them. (*Id.* ¶ 6.) Plaintiff also stated that his "overtime [pay] was always paid correctly . . . in terms of [Defendant's] policies and the way they followed their policy." (*Id.* ¶ 8.)

Yet, Plaintiff maintains that Defendant unlawfully "rounded" Plaintiff's time worked, resulting in underpayments. Specifically, Plaintiff maintains that Defendant recorded Plaintiff's time punches and then took "the extra step" to convert them to incremental rounded punches to the nearest quarter-hour. (Dkt. 68-2 [Plaintiff's Separate Statement of Undisputed Facts, hereinafter "Pl. SUF"] ¶ 38). Defendant, however, points out that this theory was not raised in Plaintiff's FAC and therefore cannot be considered here. Defendant further asserts that its rounding policy did not result in underpayment to Plaintiff in any event. (*Id.* ¶ 39.)

## B.   Meal Period Violations

Defendant's written meal period policies provide that at least a "60 minute meal break[] will be taken no later than after 5 hours of work." (*Id.* ¶ 9.) Plaintiff took a meal period during his first 5 hours on the job. (*Id.* ¶ 10.) If Plaintiff worked a ten-hour day, he had a second 30-minute or 45-minute meal period. (*Id.* ¶ 11.) Plaintiff also testified that during an 8-hour shift, his meal periods started after 4 ½ hours of work and that he took his meal period whenever he had an 8-hour shift. (*Id.* ¶ 12.)

However, the parties dispute whether Defendant's policy allowed Plaintiff to take a second meal period if he worked 10 consecutive hours. Defendant maintains that its

written meal period policies provide for a second 30-minute meal period when employees worked 10 hours consecutively.  (*Id.* ¶ 13.)  But Plaintiff testified that Defendant's policy was that you could not take a second meal period after 10 hours, but only after 12 hours.  (*Id.*; Dkt. 67-1 [Plaintiff's Deposition, hereinafter "Pl. Dep."] 124:10-16.)  Nevertheless, Plaintiff never saw a written document that prohibited employees from taking a second meal period if they worked more than 10 hours.  (*Id.* ¶ 14.)  Nor did Defendant ever tell Plaintiff that he was prohibited from taking another meal break after 10 hours.  (*Id.* ¶ 21.)  Finally, Defendant also posted Industrial Welfare Commission ("IWC") Wage Order 7-2001 ("Wage Order 7") at all relevant times in Defendant's workplace in an accessible area, which included all of the rules for meal periods.[3]  (*Id.* ¶ 16; Dkt. 65-3 [Declaration of Jose Vargas in Support of Defendant's Motion for Summary Judgment] ¶¶ 5, 6, Ex. A.)  Wage Order 7 states:

> (A)    No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the

---

[3] Plaintiff objects to the declaration of Jose Vargas, Defendant's Director of Distribution Center Operations at the Distribution Center in Ontario, California.  Plaintiff asserts that Mr. Vargas's declaration describing when and where Wage Order 7 was posted and how accessible it was to employees at the Ontario Distribution Center facility is conclusory, speculative, conjecture, improper lay opinion, ambiguous, lacks foundation, and irrelevant.  (Dkt. 66-1 [Supplementary Evidentiary Objections] ¶¶ 1–3.)  But Mr. Vargas submits that he has personal knowledge of the information in his declaration since he is responsible for such operations and has been since 2016.  (*Id.* ¶¶ 1, 2.)  Therefore this portion of his declaration is not speculative, conjecture, conclusory, or an improper lay opinion.  *See* Fed. R. Evid. 602.  The testimony is also relevant because whether the wage order was posted at Defendant's workplace makes it more or less likely that Defendant committed meal and rest break violations.  Fed. R. Evid. 401, 402; *see Sandoval*, 985 F.3d at 665.

Plaintiff also objects to Exhibit A to Mr. Vargas's declaration, a purported copy of the Wage Order posted at Defendant's Ontario Distribution Facility, as lacking foundation, irrelevant, lacking personal knowledge, and inauthentic.  (Dkt. 66-1 ¶ 4.)  As already established, Mr. Vargas has personal knowledge of the document and its posting in the workplace.  The Court also finds no reason, and Plaintiff does not offer any, to question whether Exhibit A to Mr. Vargas's declaration is what he claims it to be in his affidavit, *i.e.*, the posted Wage Order 7.  *See* Fed. R. Evid. 901(b)(1); *see also Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (proper foundation to authenticating a document "need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902.").

day's work the meal period may be waived by mutual consent of the employer and the employee.

(B)     An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(*Id.* at 8.)

Plaintiff clearly understood that he was entitled to a second meal period if he worked 10 consecutive hours.  In fact, Plaintiff signed a "Meal Break Waiver" stating that:

> I understand that I am entitled to a second unpaid meal break of at least 45 minutes if I work more than ten (10) hours during a working day.  However, I understand that I can waive the second meal period when my total day's work will be completed within a work period of not more than (12) hours, as long as I did not waive the first meal period.

(SUF ¶¶ 18, 19, 20.)  Above the signature line, the waiver also states that "I enter into this agreement freely and voluntarily.  I understand I may revoke this agreement at any time by signing this form as indicated below." (Dkt. 68-1 at 22.)  Plaintiff's signature appears directly below this wording.  (*Id.*)  But Plaintiff disputes Defendant's contention that he signed the meal period waiver voluntarily, testifying that he thought he was required to sign the waiver because he thought his job would be in jeopardy if he did not do so.  (Pl. SUF ¶¶ 48, 49.)

//
//

## C.     Rest Period Violations

Plaintiff also maintains that he was improperly denied rest breaks, primarily focusing on Defendant's alleged denial of a third rest break when Plaintiff worked more than 10 hours.  Defendant's written rest period policy provides for 15-minute paid rest periods "for every four consecutive hours of work," with rest periods to be taken "before the third hour of each consecutive four-hour period."  (SUF ¶ 22.)  Again, Defendant also posted Wage Order 7 at all relevant times, which included all of the rules for rest periods. (*Id.* ¶ 24.)  Wage Order 7 provides:

> (A)    Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours.  Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
>
> (B)    If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

(Vargas Decl., Ex. A at 13.)  Though Plaintiff also testified that no one ever told him that he was "prohibited from taking another work break after ten hours," (SUF ¶ 26), he also testified that he did not take his third rest break nor was he offered one during 10-hour shifts.  (Pl. Dep. 119:9-22, 123:5-13.)

//
//
//

### D.    Overtime or Regular Rate of Pay Violations

Plaintiff contends that Defendant miscalculated his rate of pay, which Defendant used to calculate Plaintiff's overtime wages, because the rate of pay failed to account for annual bonuses he received.  Plaintiff received an annual, performance-based "PSP" bonus that Defendant calculated by applying a percentage multiplier to all eligible earnings paid during the fiscal year.  (SUF ¶ 29.)  Eligible earnings included Plaintiff's regular hours, overtime hours, corporate holiday hours, floating holiday hours, and paid time off hours, but excluded Plaintiff's bonuses.  (*Id.* ¶ 30.)  In 2016, Plaintiff received a PSP bonus in the amount of $540 per month, which was based on percentage multipliers applied to his total eligible earnings (including overtime) for that fiscal year.  (*Id.* ¶ 31.)  In 2017, Plaintiff's annual bonus was $675.  (*Id.* ¶ 32.)  Plaintiff did not receive a bonus in 2018 because he was terminated for misconduct.  (*Id.* ¶ 33.)

### E.    Failure to Pay All Wages Due at Termination

Plaintiff testified that although he was terminated on July 6, 2018, Defendant extended his "termination date" to July 18, 2018.  (*Id.* ¶ 34.)  Plaintiff also testified that he received a paycheck through July 18, 2018, although Plaintiff contends that he should have been paid his final bonus upon termination.  (*Id.* ¶ 35.)

## III.   LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  A factual issue is "genuine" when there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law.  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 249.  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 325.

When the moving party will have the burden of proof on its claim at trial, "it must demonstrate that no reasonable trier of fact could find other than for the moving party[.]"  *Ybarra v. John Bean Technologies Corp.*, 853 F. Supp. 2d 997, 1001 (E.D. Cal. 2012) (citing *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case."  *Soremekun*, 509 F.3d at 984.  If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. Proc. 56(e).   ǃ

ǃ   The court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  The court does not make credibility determinations or weigh conflicting evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).  But conclusory and speculative testimony in affidavits or moving papers is insufficient to raise triable issues of fact and defeat summary judgment.  *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

# IV.   DISCUSSION

Defendant is entitled to summary judgment on all of Plaintiff's claims.  The Court now explains why there is no genuine dispute as to any material fact regarding each of those claims.

## A.   Failure to Provide Required Meal Periods

There is no triable issue of fact as to whether Defendant failed to provide required meal periods to Plaintiff.  Though Plaintiff contends that he was "required to work over ten (10) hours per shift without being provided a second meal period" and was "required to work over six (6) hours per shift on Saturdays without a meal break[,]" (Dkt. 66 [Plaintiff's Opposition to Motion for Summary Judgment, hereinafter "Opp."] at 18), he presents no valid evidence to support his assertions.  *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 486 (9th Cir. 2010) ("The district court bore no burden to "comb through the voluminous record searching for evidentiary bases to introduce the evidence at issue[.]"").

State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday.  Cal. Lab. Code §§ 226.7; 510, 512; IWC Wage Order 7–2001.  California Labor Code § 226.7(a) prohibits an employer from requiring an employee 'to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."  The Industrial Welfare Commission ("IWC") is the "state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California [while the] Division of Labor Standards Enforcement ["DLSE"]. . . is the state agency empowered to enforce California's labor laws, including IWC wage orders." *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557, 561–62 (1996).  The IWC has promulgated a series of wage orders, which

apply to separate industries or occupations.  *See* Cal. Code Regs. tit. 8, §§ 11000-170. Although wage orders are not legislative enactments, California law deems them 'presumptively valid' sources of regulations that are "to be accorded the same dignity as statutes."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004 (2012).

The applicable wage order here, Wage Order 7, provides:

> (A)    No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee

> (B)    An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(Vargas Decl. ¶ 6, Ex. A at 8 [IWC Wage Order 7-2001, §§ 11(A), 11(B)].)

Plaintiff does not dispute that Defendant's written meal period policies authorized and provided an uninterrupted, duty-free meal period, of at least 30 minutes, for the first 5 hours of work and "[a]nother 60 minute meal break should . . . the employee work[] 10 consecutive hours."  (SUF ¶ 9; Pl. Dep., Ex. 9.)  Plaintiff also does not dispute that Defendant posted Wage Order 7 at all relevant times in an accessible location to employees, which included the rules for meal periods.  (SUF ¶ 16; Vargas Decl. ¶ 6; Pl. Dep. 150:4-11 [testifying that Plaintiff is unable to refute that the Wage Order was posted at all relevant times].)  "Various district courts in California have held . . . that employers fulfill their duty [to provide meal periods] by posting the relevant IWC Wage Order at the employee's work location and need not inform individual employees of their right to take

second meal breaks." *Perez v. Performance Food Group, Inc.*, 2017 WL 6940526, at *7 (C.D. Cal. Dec. 15, 2017); *see also Nguyen*, 2011 WL 6018284, at *6–7 (C.D. Cal. Nov. 28, 2011) (finding employer's policy lawful because it posted the IWC Wage Order in its lunchroom and "no evidence that [plaintiff] was somehow deterred from reading the Wage Order" was presented).

Plaintiff also signed and executed a valid meal period waiver foreclosing any claim for second meal period violations. *See Garcia v. Wal-Mart Stores, Inc.*, 2019 WL 12536542, at *6–7 (C.D. Cal. Aug. 9, 2019). Defendant allowed employees to voluntarily waive their second meal period when permitted under the law. (Mot. at 8; SUF ¶¶ 18, 19, 20; Pl. Dep., Ex. 10.) Plaintiff admitted that he "signed this meal break waiver form." (SUF ¶ 18; Pl. Dep. 132:13–15.) He also admitted that when he signed the waiver, he "understood that [he was] waiving a second period if [he] worked more than ten hours, but less than 12 hours a day." (*Id.* ¶ 20; Pl. Dep. 133:20-134:1.)

Plaintiff's argument that he thought he was required to sign the waiver because his job would be in jeopardy if he did not does not create a triable issue of fact. In *Perez*, the plaintiff claimed meal period violations because his employer did not provide second meal periods, even though the plaintiff signed a meal period waiver form. 2017 WL 6940526, at *8. The court granted summary judgment for the employer, reasoning that because the meal period waiver form states that "an employee's decision to sign the waiver is voluntary . . . whether Plaintiff believed he did not have a choice as to whether to waive his second meal break rights does not create a genuine dispute of material fact as to whether Plaintiff knowingly and voluntarily waived these rights." *Id.* The language of the waiver in *Perez* is identical to the waiver Plaintiff signed here. (*See* SUF ¶ 18; Pl. Dep., Ex. 10.) That is, the waiver states explicitly right above the signature line: "I enter into this agreement freely and voluntarily." (Dkt. 68-1 at 22.) The waiver also states that Plaintiff could have revoked the waiver at any time, providing, "I understand I may

revoke this agreement at any time by signing this form as indicated below." (*Id.*)
Plaintiff provides no evidence indicating that he was forced or pressured to sign the form.
Nor does he provide any evidence that a supervisor told him, or even suggested, that his
employment was contingent on waiving his second meal break or that it would create
issues for Plaintiff if he did not sign the form. *See, e.g.*, *Harris v. TAP Worldwide, LLC*,
248 Cal. App. 4th 373, 383 (2016) ("The fact that [plaintiff] either chose not to read or
take the time to understand these provisions is legally irrelevant[.]"); *Stewart v. Preston
Pipeline Inc.*, 134 Cal. App. 4th 1565, 1589 (2005) ("Plaintiff has cited no California
cases (and we are aware of none) that stand for the extreme proposition that a party who
fails to read a contract but nonetheless objectively manifests his assent by signing it—
absent fraud or knowledge by the other contracting party of the alleged mistake—may
later rescind the agreement on the basis that he did not agree to its terms.").[4]

Nevertheless, Plaintiff still asserts that there is a genuine issue of material fact with
respect to meal period violations because he "understood Defendant's actual policy and
practice was to not provide a second meal period after ten hours of work," (Opp. at 18),
and he was never explicitly offered a second meal period. But Plaintiff's subjective
belief about Defendant's policy is not enough to create a genuine issue of material fact.
*See Roberts v. Timac Transportation Servs. (W.), Inc.*, 2013 WL 4647223, at *4 (N.D.
Cal. Aug. 28, 2013) (finding plaintiff's "subjective beliefs about [employer's] actual
policy" was not enough to "support his assertions"). Plaintiff admitted in his deposition

---

[4] Plaintiff's argument that the meal break waiver is invalid under *Valenzuela v. Giummara Vineyards*
because it impermissibly shifts the burden of ensuring a meal break is provided to the employee also
fails. 614 F. Supp. 2d 1089 (E.D. Cal. 2009). Plaintiff's reliance on *Valenzuela* is misplaced. That case
concerned a different IWC wage order which regulates the meal and rest break periods of agricultural
workers. *Id.* at 1094–95. *Valenzuela* did not discuss whether prospective meal period waivers are
lawful. Recent case law confirms that there is no "controlling authority prohibiting . . . voluntary meal
break waiver[s]." *Castro v. PPG Industries, Inc. et al.*, 2021 WL 99724, at * 5 (C.D. Cal. Jan. 8, 2021).
Absent such authority, this Court joins other sister courts in declining to "endorse the unworkable meal
break waiver policy Plaintiff seeks to impose that would require an employer to obtain a separate waiver
for each meal break an employee agrees to waive." *Id.*

that he is not aware of any policy that prohibited a second meal period for 10 hours of work, (SUF ¶ 14; Pl. Dep. 127:1-5), and "no supervisory-level employee" ever told Plaintiff "'[y]ou've got to waive your second meal period or there will be some sort of consequences,'" (Pl. Dep. 137:2-6).  *Perez* also rejects the notion that employees must be directly offered or scheduled for their meal breaks.  2017 WL 6940526, at *7; *see also Parsittie v. Schneier Logistics, Inc.*, 2019 WL 8163645, at *5 (C.D. Cal. Oct. 29, 2019) (holding that there is "no requirement under California law for defendant to 'schedule[] any meal breaks for plaintiff'"); *Nguyen v. Baxter Healthcare Corp.*, 2011 WL 6018284, at *5 (C.D. Cal. Nov. 28, 2011) (same); *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 515 (N.D. Cal. 2008) (similar); *Bellinghausen v. Tractor Supply Co.*, 2013 WL 5090869, at *4 (N.D. Cal. Sept. 13, 2012) (similar).

Nor does the fact that Defendant never explicitly offered a second meal period help Plaintiff escape summary judgment.  An "employer is not obligated to police meal breaks and ensure no work thereafter is performed."  *Brinker*, 53 Cal. 4th at 1040; *see Cole v. CRST, Inc.*, 2017 WL 1234215, at *3 (C.D. Cal. Mar. 30, 2017), *aff'd sub nom. Cole v. CRST Van Expedited, Inc.*, 842 F. App'x 162 (9th Cir. 2021) (affirming summary judgment for employer because employer satisfied its only "obligation to notify employees of California's meal and rest break rules") (internal citations omitted); *Schmidtberger v. W. Ref. Retail, LLC*, 2021 WL 5024714, at *21 (C.D. Cal. Sept. 28, 2021) ("Defendant does not police meal periods to ensure they are taken and taken for a sufficient length of time.  Such a policy is consistent with Defendant's obligations under California law.").[5]

---

[5] Plaintiff's Opposition implied that he was not "provided" meal periods for shifts that were 7, 8, 9, or 10 hours.  (Opp. at 20.)  Defendant contends that the alleged violations Plaintiff identifies shows that Plaintiff worked a few minutes beyond his scheduled 6-hour shift, ranging from 3 to 9 minutes.  Under Plaintiff's theory, Defendant should have pulled him off of the warehouse floor at exactly six hours and sent him home, so there would be no meal period "violation."  Alternatively, Plaintiff's theory is that Defendant should have pulled him off the warehouse floor at exactly 6 hours, forced him to take a 30-minute meal period, and then returned to work for 3 minutes before going home.  (Reply at 15.)  As

Simply stated, there is no genuine dispute as to any material fact regarding whether Defendant failed to provide Plaintiff a second meal period. Defendant clearly did not fail to provide Plaintiff with one. Defendant's written policy stated that Plaintiff was entitled to one. Defendant posted the applicable wage order in Plaintiff's workplace, informing him that he was entitled to one, and Plaintiff himself signed a knowing, voluntary, and lawful waiver giving up his right to one.

## B.    Failure to Provide Required Rest Breaks

Defendant is also entitled to summary judgment on Plaintiff's rest break claim. Plaintiff contends that he was "prevented from taking a third rest break on shifts longer than (10) hours" and "not informed by [Defendant] that [he was] entitled to a third rest break when [he was] required to work shifts over ten (10) hours" consistent with California law. *See Brinker*, 53 Cal. 4th at 1029; (Opp. at 22; FAC ¶ 14.) However, Defendant's rest period policy provides for 15-minute rest periods "for every four consecutive hours of work," with rest periods to be taken "before the third hour of each consecutive four-hour period." (SUF ¶ 22; Pl. Dep. Ex. 9 at 1; Pl. Dep. 112:8-10.) And again, Defendant posted Wage Order 7 at all relevant times, which included all of the rules for rest periods. (Vargas Decl. ¶ 6; Pl. Dep. 150:4-11.) By posting Wage Order 7, Defendant met its legal obligations to authorize and permit rest periods for every 4 hours of work. *See, e.g., Perez*, 2017 WL 6940526, at *7; *Nguyen*, 2011 WL 6018284, at *6–7; *Safety-Kleen Sys., Inc.*, 253 F.R.D. at 515.

Plaintiff's contentions that Defendant actually prevented Plaintiff from taking a third rest break is simply not supported by the evidence. Plaintiff argues that his own

explained above, Defendant has no obligation to do either. *See Schmidtberger*, 2021 WL 5024714, at *21 ("Defendant does not police meal periods to ensure they are taken and taken for a sufficient length of time. Such a policy is consistent with Defendant's obligations under California law.").

deposition testimony creates a triable issue of fact on this claim.  (Opp. at 22–23.)
Plaintiff points to his testimony that he did not have a third rest break when he worked a
ten-hour shift.  (Pl. Dep. 119:9-11.)  Though he concedes that Defendant did not prohibit
him from taking the third break, he states that "the information that you got was to
continue working for the next 15 minutes or whatever and then you can go home.  It was
never offered."  (*Id.* at 123:5-13.)  However, the notion that Plaintiff was not "informed"
or "offered" a third rest period directly cannot create a triable issue of fact.

Indeed, Plaintiff does not dispute that Defendant's lawful written policies provide
for 15-minute paid rest periods "for every four consecutive hours of work," with rest
periods to be taken "before the third hour of each consecutive four-hour period."  (SUF
¶ 22; Pl. Dep., Ex. 9 at 1; Pl. Dep. 112:8–10.)  And Plaintiff cannot refute that the Wage
Order was posted at the relevant times in a manner accessible to him.  (Pl. Dep. 150:4-11
[testifying that Plaintiff is unable to refute that the Wage Order was posted at all relevant
times].)  At the hearing, Plaintiff's counsel insisted that the Court construe Plaintiff's
deposition testimony to mean that Defendant took affirmative action to prevent him from
receiving the third break.  However, Plaintiff's deposition testimony is nothing more than
a vague and conclusory assertion that "information" he received prevented him from
taking a break.  He did not say that any supervisor prevented him from taking the third
break, nor that any policy prevented him from taking the break.  And Defendant has no
obligation under California law to actively ensure employees take their third rest break;
rather, Defendant is only only obligated to offer it and not impede or discourage
employees from doing so  *See, e.g., Alvarez v. YRC Inc.*, 2020 WL 7485459, at *4 (C.D.
Cal. Nov. 17, 2020) (no obligation exists under California law requiring employer to
affirmatively act to provide its employees with second meal breaks and third rest breaks);
*see also Brinker*, 53 Cal.4th at 1040–41.[6]

---

[6] Plaintiff also did not dispute in his deposition that he did receive his first and second rest periods when
he worked a 10-hour day.  (*See generally* Opp.)  Indeed, Plaintiff admitted in his deposition that he

-16-

## C.    Failure to Provide Overtime Wages

There also is no genuine dispute of material fact concerning Plaintiff's allegation that Defendant miscalculated his regular rate of pay for overtime wages.  Plaintiff contends that Defendant "calculated Plaintiff's . . . regular rate of pay incorrectly by failing to include bonuses paid to all employees in determining the regular rate of pay for purposes of calculating the overtime rate."  (Opp. at 23.)  The Court disagrees.

Plaintiff received an annual, performance-based PSP bonus that Defendant calculated by applying a percentage multiplier to all eligible earnings paid during the fiscal year, including regular hours, overtime hours, corporate holiday hours, floating holiday hours, and paid time off hours.  (SUF ¶ 29; Doyle Decl. ¶¶ 4, 5, 10, Ex. A.)  This is otherwise known as a "percentage of total earnings" calculation.  (Mot. at 16; Doyle Decl. ¶¶ 4, 5, 10; Dkt. 68 [Defendant's Reply in Support of Motion for Summary Judgment, hereinafter "Reply"] at 21.)  Plaintiff identifies three bonuses he received, (Opp. at 25–26), but does not explain why or how these were not included in his regular rate of pay for overtime wages.  At any rate, "percentage of total earnings" bonuses do not need to be included in the regular rate of pay, because "bonuses for a 'percentage of total earnings'" are exempted from "all renumeration for employment paid to, or on behalf of the employee" that would normally be included in the "regular rate" of pay calculation.  *Chavez v. Converse, Inc.*, 2016 WL 4398374, at *2–3 (N.D. Cal. Aug. 18, 2016) ("Converse may provide bonuses based on a percentage of total earnings . . . without recalculating the regular rate of pay."); *see Russell v. Gov't Employees Ins. Co.*, 787 F. App'x 954, 954 (9th Cir. 2019) (similar).  Consequently, Defendant properly excluded Plaintiff's bonuses from the regular rate of pay for overtime wages, because the percentage only applied to all straight time and overtime pay.

received his first break after 2 hours of work during a 10-hour shift, and a second rest break after 3 more hours of work.  (Pl. Dep. 160:3-9, 15-17.)

**D.** **Failure to Provide Minimum Wages**

Plaintiff also contends that Defendant failed to pay him minimum wages for all hours worked by "requiring, permitting, or suffering" him to "work off the clock." (FAC ¶ 40.) Defendant maintains that there is no triable issue concerning this cause of action because Defendant's own policies required employees to record all time accurately, Plaintiff was aware of these policies, and Plaintiff accurately recorded all time worked. (Mot. at 1–5.) Plaintiff responds that the time records are inaccurate and Defendant improperly rounded Plaintiff's work time down, resulting in underpayment of his regular and overtime wages. (Opp. at 11–15.) In Reply, Defendant maintains that Plaintiff admitted the time sheets are correct and that the theory of improper rounding cannot be considered because Plaintiff has never raised the issue in any iteration of his complaint. (Reply at 1–5.) The Court agrees.

**1.** **There is No Genuine Dispute of Material Fact Concerning Plaintiff's Time Sheets**

Plaintiff's first argument that his time sheets do not reflect all of the time he worked fails to raise a genuine dispute of material fact. Defendant's policy provides that employees must be clocked in whenever they are performing work and cannot work off-the-clock. (SUF ¶ 1; Pl. Dep., Ex. 7.) Further, Plaintiff admitted that it was his "understanding of the policy" that "[h]ourly or nonexempt employees should only be performing work while clocked in or recording their time." (SUF ¶ 2; Pl. Dep. 107:19-108:2.) Plaintiff also stated that it was his understanding that "[a]ll time worked, whether scheduled or unscheduled, overtime or straight time, authorized or unauthorized, must always be recorded as exactly as it occurred." (SUF ¶ 3; Pl. Dep. 108:18-109:2.) And Plaintiff admitted that his time punches were accurate "show[ing] all the time that [he was] either working or not working based on when [he] punched in and punched out[.]"

-18-

(SUF ¶ 4; Pl. Dep. 111:14-18.)  Plaintiff also conceded that he could correct his punches any time they did not accurately reflect all hours worked, and that each time he told his supervisor there was a mistake, the mistake was corrected.  (SUF ¶¶ 5, 6; Pl. Dep. 98:1-8.)  Yet, Plaintiff still somehow maintains that the evidence does not support these admissions, pointing to a confusing statement in his deposition suggesting that the time punches he submitted were inaccurate because they were entered according to Defendant's own policies, rather than the law.  (Opp. at 16–17.)  But without more, this does not help Plaintiff survive summary judgment.

Numerous courts have held that an employee cannot recover wages for alleged work off the clock if he did not record all of the work on his time punches.  *See, e.g.*, *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (affirming summary judgment for employer after finding it "quite obvious that . . .  plaintiff deliberately omitted the inclusion of those hours from his time sheet even though he admittedly knew that he should have been paid for those hours"); *Jong v. Kaiser Foundation Health Plan, Inc.*, 226 Cal. App. 4th 391, 395 (2015) ("Where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation."); *Zimmerman v. Comcast Corp.*, 2016 WL 6892134, at *2 (C.D. Cal. Nov. 22, 2018) ("[B]y submitting these time sheets, the employee acknowledges that they are responsible for accurately recording their time.")  Simply put, Plaintiff cannot create a genuine issue of material fact by claiming that an employee may fail to record all time worked, fail to use an employer's system to correct inaccurate time records, leave their employment, and then later claim that they were working off the clock.

//

//

### 2. Plaintiff's Rounding Theory Fails

Plaintiff also cannot escape summary judgment by claiming for the first time in opposition that Defendant improperly rounded Plaintiff's work time resulting in underpayments.  Indeed, Plaintiff's FAC never mentions the word "rounding" once.  (*See generally* FAC.)  Instead, Plaintiff alleges that "Plaintiff and other non-exempt employees were interrupted during their breaks, forcing them to effectively work off-the-clock," resulting in unpaid "minimum wages and overtime hours they were due."  (*Id.* ¶ 16.)  Plaintiff's other allegations include that he was not paid "minimum wages for all hours worked by, among other things: requiring, permitting, or suffering PLAINTIFF . . . to work off the clock; requiring, permitting, or suffering PLAINTIFF . . . to work through mean or rest breaks; [and] illegally and [i]naccurately recording time in which PLAINTIFF . . . worked."  (*Id.* ¶ 40.)  None of these allegations put Defendant on notice of Plaintiff's improper rounding theory.

When a "plaintiff has not previously put defendant on notice as to the rounding claim in the complaint" and pleads nothing more than "blanket allegations of 'failure to record all time spent working' or 'compensat[e] for work performed,'" then the "plaintiff fail[s] to provide sufficient notice under Rule 8."  *Pena v. Taylor Farms Pac., Inc.*, 2014 WL 1330754, at *5 (E.D. Cal. Mar. 28, 2014) (quoting *Adobe Lumber Inc. v. Hellman*, 2010 WL 760826, at *5 (E.D. Cal. Mar. 4, 2010)); *see also Hernandez v. Dickey*, 2018 WL 5906031, at *1 (C.D. Cal. May 10, 2018) ("It is well-settled that the 'issues on summary judgment are framed by the Complaint.'  Since 'the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations,' courts routinely hold that 'a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blindside the defendant with a new legal issue after the bulk of discovery has likely been completed.'") (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–1293 (9th Cir.

2000)).  "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

Defendant would also be prejudiced if the Court allowed Plaintiff to raise this new theory now.  When a Defendant does not have adequate notice of a claim, they may not take adequate discovery of the claim, as happened here.  Defendant deposed Plaintiff on August 13, 2019.  (Dkt. 68-1 [Declaration of Michael Afar in Support of Defendant's Motion for Summary Judgment] ¶ 3.)  Defendant did not examine Plaintiff about any "rounding" theories at deposition, because there were no "rounding" theories alleged in the pleadings.  (*Id.* ¶ 15.)  Though Plaintiff raised the rounding theory in his motion for class certification on February 20, 2020, this was after Plaintiff was deposed.  In the order denying class certification, the Court explained that the rounding theory presented individualized issues because there must be evidence as to whether each putative class member was in fact working during the time that was rounded down, highlighting the need for Defendant to take discovery on the rounding theory and prejudice to Defendant should Plaintiff be allowed to assert this theory now.  (Dkt. 38 at 14.)

In any event, there is nothing to suggest that Plaintiff was underpaid because of Defendant's rounding policy.  Defendant presents evidence that Plaintiff either "broke even" or "gained" time in 62.2% of his rounded time punches, losing time in only 37.8% of instances.  (Dkt. 68-1 [Reply Declaration of Michael Afar] ¶ 13.)  *AHMC Healthcare, Inc. v. Superior Ct.*, which considered the lawfulness of a rounding policy identical to Defendant's, confirms that policies which "result[] in either neutral or rounding in favor of the employee[,]" as occurred here, are lawful.  24 Cal. App. 5th 1014, 1026 (2018).  When "the rounding system is neutral on its face[,]" meaning when an employee will "gain or break even," there is no wage violation.  *Id.* at 1017–18.  Therefore, Plaintiff's rounding claim is both procedurally improper and lacks merit.

### E.  Failure to Pay All Wages Due at Termination

Plaintiff's claim that he was not paid all wages at the time of his termination also fails to raise a genuine dispute of material fact.  Plaintiff raises three arguments to advance this claim.  First, that Defendant did not pay Plaintiff at the proper rate of pay because the rate excluded bonuses he received.  Second, that Defendant owed Plaintiff his final bonus upon termination.  Third, that Plaintiff's final pay was untimely because he received it on July 18, 2018, rather than July 6, 2018.

As the Court has already explained, there is no genuine dispute as to whether Defendant failed to pay all wages at the proper rate of pay because the law does not require the rate to include the type of bonus Plaintiff received.  *See Chavez*, 2016 WL 4398374, at *2–3 (holding that the defendant's practice of withholding its "percentage of total earnings" calculation for its bonuses from its regular rate of pay calculations was lawful).  Additionally, Plaintiff was not eligible to receive his final bonus under Defendant's policies.  Defendant's annual PSP bonus required Plaintiff to be "an employee as of May 31st of the applicable Fiscal Year, and not be terminated for Misconduct or Unsatisfactory Performance prior to the PSP Bonus payout to receive the payment."  (Dkt. 34-2, Doyle Decl. ¶ 9.)  It is undisputed here that Plaintiff was terminated for misconduct prior to the PSP Bonus payout.[7]

Finally, there is also no material dispute regarding whether Plaintiff's final pay was delayed under California law.  (Opp. at 28.)  Plaintiff admitted that his "termination date" was "extended to July 18, 2018," rather than July 6, 2018.  (SUF ¶ 34; Pl. Dep. 14:2-4.)  Plaintiff also admitted that he "received a paycheck through July 18, 2018," the actual date of his termination.  (Pl. Dep. 14:5-7.)

---

[7] At the hearing, counsel for Plaintiff argued that Plaintiff did not actually commit misconduct as Defendant contends.  That issue is not before the Court nor is it relevant to the analysis here.

**F.     Failure to Maintain Required Records**

Plaintiff's claim that Defendant failed to maintain required records is entirely derivative of his claims for failure to pay "all wages earned and due." Specifically, Plaintiff alleges that failure to pay "all wages earned and due" also results in a failure to "maintain records as required under California Labor Code §§ 226, 11174, and IWC Wage Order No. 1-2001, § 7." (FAC ¶ 50.) Given that Plaintiff's underlying causes of action for failure to pay minimum and overtime wages fail to raise a genuine dispute of material fact, so too does Plaintiff's claim for failure to maintain required records raise one. *See Magana v. Lab'y Corp. of Am.*, 2021 WL 4233901, at * 8 (C.D. Cal. Aug. 16, 2021) (dismissing claim for failure to maintain required records because the claim is "derivative of the wage and hour claims" alleged); *Brewer v. Gen Nutrition Corp.*, 2014 WL 5877695, at *5 (N.D. Cal. Nov. 12, 2014) (same).

**G.     Failure to Furnish Accurate Itemized Wage Statements**

Plaintiff's claim for inaccurate wage statements also fails to raise a genuine dispute of material fact. California Labor Code § 226 requires employers to show employees what they were in fact paid, not what employees allege they should have been (but were not) paid. *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1337 (2018). Plaintiff contends that "Plaintiff may pursue wage statement penalties based on Defendant's failure to list meal and rest break premiums owed under Labor Code section 226.7." (Opp. at 26.) But meal and rest period premiums cannot support wage statement claims because such claims are derivative of other wage and hour violations Plaintiff has already alleged. *See Naranjo v. Spectrum Sec. Servs. Inc.*, 40 Cal. App. 5th 444, 474 (2019), *as modified on denial of reh'g*, (Oct. 10, 2019) ("[W]e hold that section 226.7 actions do not entitle employees to pursue the derivative penalties in sections 203 and 226 [for wage statements].")); *see also Betancourt v. OS Rest. Servs., LLC*, 49 Cal. App.

5th 240, 248 (2020), *reh'g denied* (May 18, 2020) ("We agree with . . . *Naranjo* that a plaintiff is not entitled to recover penalties for waiting time and wage statement violations based on claims of nonprovision of rest or meal periods[.]").

Plaintiff also contends that he "received wage statements that were inaccurate, due to Defendant's illegal timekeeping . . . [and] incorrectly recording all hours worked." (Opp. at 26.)  But this also does not cure the issue.  "[Plaintiff] does not allege the wage statements inaccurately documented the amount of money []he actually received. Instead, []he argues only that they are inaccurate because [Defendant] was improperly compensating h[im].  Recovery on h[is] wage statements claim then would be impermissible double recovery for h[is] hours worked claims." *Sagastume v. Psychemedic Corp.*, 2020 WL 8175597, at *5 (C.D. Cal. Nov. 30, 2020); *see Hines v. Constellis Integrated Risk Mgmt. Servs.*, 2020 WL 5764400, at *6 (C.D. Cal. Sept. 25, 2020) (dismissing wage statement claims because "Plaintiff appears to allege only that the amount he was paid was incorrect, not that the wage statements inaccurately reflected the wages he was paid[.]"); *Sherman v. Schneider Nat'l Carriers, Inc.*, 2019 WL 32200585, at *5 (C.D. Cal. Mar. 6, 2019) (same).

## H.    Unfair Competition Law

Since the Court has concluded that there are no genuine disputes of material fact as to any of Plaintiff's alleged wage and hour violations, Plaintiff's claim for unfair and unlawful business practices under California's UCL also fails to raise one.  *See, e.g.*, *Anderson v. Equinox Holdings, Inc.*, 813 F. App'x 308, 310 (9th Cir. 2020) (the "derivative claims for . . .  unfair business practices all necessarily fail along with the claims [for wage and hour violations] above"); *Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("If the [underlying] claim is dismissed, then there is no unlawful act upon which to base the derivative Unfair

1    Competition claim."); *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001)

2    (stating that the viability of a UCL claim "stand[s] or fall[s]" with the underlying claim).[8]

3

4

5    //

6    //

7    //

8    //

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23

24   _____

25   [8] Plaintiff asks the Court for leave to amend his Complaint. (Opp. at 29–30.)  The deadline to "file and *have heard* all motions, including motions to amend the pleadings, is January 10, 2022."  (Dkt. 63 [emphasis added].)  Plaintiff was thus required to file any motion to amend the pleadings by December 13, 2021, which Plaintiff failed to do.  Moreover, the Ninth Circuit has held that a plaintiff cannot seek to amend his complaint to avoid summary judgment.  *See, e.g.*, *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986).  Given the ample time Plaintiff had to amend his complaint, the Court finds that Plaintiff's motion is an improper attempt to avoid summary judgment.

26

27

28

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.  The Court will enter judgment consistent with this order.

DATED:     January 11, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE